```
              IN THE DISTRICT COURT OF THE UNITED STATES
                 FOR THE DISTRICT OF SOUTH CAROLINA
                          CHARLESTON DIVISION
```

| | |
|---|---|
| Linda Pierce, | Civil Action No. 2:12-03272-JMC-BHH |
| Plaintiff, | |
| vs. | |
| Carolyn W. Colvin, Acting Commissioner of Social Security, | **REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE** |
| Defendant. | |

This case is before the Court for a Report and Recommendation pursuant to Local Rule 73.02(B)(2)(a), D.S.C., concerning the disposition of Social Security cases in this District, and Title 28, United States Code, Section 636(b)(1)(B).[1]

The Plaintiff, Linda Pierce, brought this action pursuant to Section 205(g) of the Social Security Act, as amended, (42 U.S.C. Section 405(g)), to obtain judicial review of a final decision of the Commissioner of Social Security Administration regarding her claim for disability insurance benefits ("DIB") under Title II of the Social Security Act ("Act").

## RELEVANT FACTS AND ADMINISTRATIVE PROCEEDINGS

Plaintiff was 35 years old on her amended alleged disability onset date of February 1, 2007. (R. at 12, 31.) Plaintiff alleges disability due to, *inter alia*, degenerative disc disease, fibromyalgia, obesity, and anxiety/depression. (R. at 15.) Plaintiff has a GED and past relevant work as an emergency medical technician, a police officer, and an inspector. (R. at 31, 47-48.)

Plaintiff filed an application for DIB on June 12, 2009. (*See* R. at 111.) Her application was denied initially and on reconsideration. (R. at 118.) An Administrative Law Judge ("ALJ") held a hearing on March 21, 2011. (R. at 118.) In a decision dated April 29, 2011, the ALJ found that Plaintiff was not disabled. (R. at 118-28.) On July 22, 2011, the Appeals

---

[1] A Report and Recommendation is being filed in this case, in which one or both parties declined to consent to disposition by the magistrate judge.

Council vacated the ALJ's decision and remanded the case to the ALJ for resolution of various issues. (R. at 137-38.) The ALJ held a second hearing on January 17, 2012. (R. at 43-73.) In a decision dated January 27, 2012, the ALJ found that Plaintiff was not disabled. (R. at 12-33.) The Appeals Council denied Plaintiff's request for review, (R. at 1-4), making the ALJ's decision the Commissioner's final decision for purposes of judicial review.

In making the determination that Plaintiff is not entitled to benefits, the Commissioner has adopted the following findings of the ALJ:

> (1)     The claimant last met the insured status requirements of the Social Security Act on December 31, 2011.
>
> (2)     The claimant did not engage in substantial gainful activity during the period from her amended alleged onset date of February 1, 2007, through her date last insured of December 31, 2011 (20 CFR 404.1571 *et seq.*)
>
> (3)     Through the date last insured, the claimant had the following severe impairments: degenerative disc disease, fibromyalgia, and obesity (20 CFR 404.1520(c)).
>
> (4)     Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).
>
> (5)     After careful consideration of the entire record, I find that, through the date last insured, the claimant had the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a). Specifically, the claimant is able to lift and carry up to 10 pounds occasionally and lesser amounts frequently, sit for 6 hours in an 8-hour day, and stand and walk occasionally, except she is limited to occasional stooping, kneeling, crouching, crawling, bilateral pedal pushing and pulling, and climbing stairs. She may not climb ladders and must be permitted to alternate sitting and standing. Further, the claimant requires the frequent use of a cane for balancing and occasional use of a wheelchair for prolonged distance walking. She must avoid extreme heat, extreme cold, and unprotected heights.
>
> (6)     Through the date last insured, the claimant was unable to perform any past relevant work (20 CFR 404.1565).
>
> (7)     The claimant was born on September 21, 1971 and was 40 years old, which is defined as a younger individual age 18-44, on the date last insured (20 CFR 404.1563).

> (8) The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).
>
> (9) The claimant has acquired work skills from past relevant work (20 CFR 404.1568).
>
> (10) Considering the claimant's age, education, work experience, and residual functional capacity, the claimant had acquired work skills from past relevant work that were transferable to other occupations with jobs existing in significant numbers in the national economy (20 CFR 404.1569, 404.1569(a), and 404.1568(d)).
>
> (11) The claimant was not under a disability, as defined in the Social Security Act, at any time from December 27, 2006, the alleged onset date, through December 31, 2011, the date last insured (20 CFR 404.1520(g)).

## **APPLICABLE LAW**

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability." 42 U.S.C. § 423(a). "Disability" is defined in 42 U.S.C. § 423(d)(1)(A) as:

> the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]

42 U.S.C. § 423(d)(1)(A).

To facilitate a uniform and efficient processing of disability claims, the Act has by regulation reduced the statutory definition of "disability" to a series of five sequential questions. An examiner must consider whether the claimant (1) is engaged in substantial gainful activity, (2) has a severe impairment, (3) has an impairment which equals an illness contained in the Social Security Administration's Official Listings of Impairments found at 20 C.F.R. Part 4, Subpart P, App. 1, (4) has an impairment which prevents past relevant work, and (5) has an impairment which prevents him from doing substantial gainful employment. *See* 20 C.F.R. § 404.1520. If an individual is found not disabled at any step, further inquiry is unnecessary. *See Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981).

A plaintiff is not disabled within the meaning of the Act if he can return to past relevant work as it is customarily performed in the economy or as the claimant actually performed the work. Social Security Ruling ("SSR") 82–62. The plaintiff bears the burden of establishing his inability to work within the meaning of the Act. 42 U.S.C. § 423(d)(5). He must make a prima facie showing of disability by showing he is unable to return to his past relevant work. *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983).

Once an individual has established an inability to return to his past relevant work, the burden is on the Commissioner to come forward with evidence that the plaintiff can perform alternative work and that such work exists in the regional economy. The Commissioner may carry the burden of demonstrating the existence of jobs available in the national economy which the plaintiff can perform despite the existence of impairments which prevent the return to past relevant work by obtaining testimony from a vocational expert. *Id.*

The scope of judicial review by the federal courts in disability cases is narrowly tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the correct law was applied. *Richardson v. Perales*, 402 U.S. 389 (1971); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Consequently, the Act precludes a *de novo* review of the evidence and requires the court to uphold the Commissioner's decision as long as it is supported by substantial evidence. *See Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (citing *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). The phrase "supported by substantial evidence" is defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

*Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir.1966). Thus, it is the duty of this court to give careful scrutiny to the whole record to assure that there is a sound foundation for the Commissioner's findings, and that her conclusion is rational. *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the

Commissioner, that decision must be affirmed. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

## DISCUSSION

Plaintiff contends that the ALJ erred in failing to find her disabled. Specifically, she alleges the ALJ erred in (1) failing to properly consider her reflex sympathetic dystrophy ("RSD") impairment pursuant to SSR 03-2p; (2) evaluating her credibility; and (3) evaluating the opinion evidence of her treating physician (Dr. Kathleen Grabowski).

### I.     Severe Impairment, SSR 03-2p

Plaintiff alleges the ALJ erred in failing to find that her RSD was a severe impairment and in failing to analyze it pursuant to the framework outlined in SSR 03-2p. The Commissioner contends that the ALJ properly considered all of Plaintiff's alleged impairments, including RSD. In particular, the Commissioner contends the ALJ was not required to evaluate Plaintiff's RSD under SSR 03-2p because Dr. Grabowski's diagnosis was uncertain (as she referred Plaintiff to specialists to evaluate Plaintiff for RSD), Dr. Tsai allegedly opined Plaintiff did not have RSD, Dr. Grabowski and Dr. Richard Osenbach (an examining physician who assessed CRPS) did not assess any functional limitations specifically related to their diagnoses of RSD/CRPS, and Plaintiff offers no explanation as to how adding RSD/CRPS to her list of impairments supports a more restrictive residual functional capacity finding.

RSD (also known as Chronic Regional Pain Syndrome ("CRPS")) "is a chronic pain syndrome most often resulting from trauma to a single extremity" that manifests due to abnormal sympathetic nervous system function. Diagnostic criteria for RSD/CRPS include "persistent, intense pain that results in impaired mobility of the affected region," along with swelling, autonomic instability (changes in skin color or texture, changes in sweating, skin temperature changes, or "gooseflesh"), abnormal hair or nail growth, osteoporosis, or involuntary movements. *See* SSR 03–2p, 2003 WL 22399117 (2003) at *2.

It is the claimant's burden to show that he or she had a severe impairment. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5 (1987). A non-severe impairment is defined as

one that "does not significantly limit [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1521(a). "Basic work activities" are defined as:

> the abilities and aptitudes necessary to do most jobs. Examples of these include—
>
> (1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;
>
> (2) Capacities for seeing, hearing, and speaking;
>
> (3) Understanding, carrying out, and remembering simple instructions;
>
> (4) Use of judgment;
>
> (5) Responding appropriately to supervision, co-workers and usual work situations; and
>
> (6) Dealing with changes in a routine work setting.

20 C.F.R. § 404.1521(b). An impairment is "not severe" or insignificant only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience. *Evans v. Heckler*, 734 F.2d 1012, 1014 (4th Cir.1984).

Plaintiff has presented evidence of RSD as described in SSR 03-2p, including pain resulting in impaired mobility in the affected region (right lower extremity), swelling, and autonomic instability (specifically changes in skin color and in skin temperature). There are numerous references in the record as to Plaintiff's antalgic gait and her use of a cane and/or a wheelchair. (*See, e.g.*, R. at 455, 591, 677, 784, 789, 798, 867, 869-870.) Plaintiff also consistently reported pain and was prescribed numerous pain relieving measures including physical therapy (R. at 531-543) placement of a spinal cord stimulator (R. 528-530), and narcotic and other medications to relieve pain from her impairments (*see* R. at 404, 448-449).

On August 7, 2008, Dr. Grabowski (a treating physician) evaluated Plaintiff for pain control and noted Plaintiff had a bluish cast along the entire length of her right leg, her right leg was cooler to touch than her left leg, she had edema in her foot, no dorsalis pulse could be felt, she had poor capillary refill and moderate cyanosis, and there was decreased

sensation in her right lateral lower extremity. (R. at 577.) Dr. Grabowski noted Plaintiff's right lower extremity was cooler than her left extremity on November 3, 2008. (R. at 583.)

Dr. Robert E. Brabham, a psychologist, performed a psychological and vocational evaluation on December 2, 2008. He noted that Plaintiff's right leg was "obvious[ly] quite swollen, compared to her left, and was also obviously purple [and] discolored." (R. at 591.)

On December 15, 2008, Dr. Grabowski opined that, prior to October 2008, Plaintiff "had permanent limitations for standing, sitting or walking for more than 10 to 15 minutes at a time," and she "has required assistance with ambulation in the form of cane or wheelchair since the original injury 12/27/06." (R. at 589.)

On January 6, 2009, Dr. Jeffrey Faaberg performed an independent medical examination at the request of Plaintiff's attorney. The circumference of Plaintiff's right leg was larger than that of the left, she had diminished deep tendon reflexes globally, sensory function was diminished on her right lateral foot, she had a loss of strength in her lower extremities and sensory changes below the knees, and she had evidence of change in sympathetic tone in both lower extremities. Dr. Faaberg stated that Plaintiff had "evidence of sympathetic dystrophy in [her] lower extremities." He assigned a ten percent regional impairment of each of her lower extremities secondary to RSD. (R. at 602.) In an addendum, he indicated that Plaintiff's chronic pain syndrome was a "severely debilitating syndrome in regards to actual quantification of impairment." He stated he "agreed with Dr. Brabham in regards to [Plaintiff's] unemployability for the foreseeable future. She is incapable of even the most sedentary activities due to her lack of lifting capability, inability to sit or stand for greater than 15 minutes. She is also incapable of assuming the sitting or standing position or changing between positions without severe discomfort." (R. at 603.)

On January 7, 2008, Dr. Grabowski opined that, to a medical degree of certainty, Plaintiff had RSD and she would ask for a referral for a specialist in RSD. (R. at 588.) She noted Plaintiff's right lower extremity was cooler than her left extremity on January 8, 2009. On February 9, 2009, Plaintiff said she recently saw Dr. Tsai, a neurosurgeon, for an evaluation of RSD. Plaintiff reported that Dr. Tsai felt that her symptoms were not consistent

7

with RSD. Dr. Grabowski spoke with Dr. Tsai and reported Dr. Tsai was "unsure whether [Plaintiff] has myositis, pain from degenerative disc disease, fibromyalgia, or possible psychiatric cause." (R. at 670.)

On February 11, 2009, Dr. Osenbach evaluated Plaintiff at her attorney's request. He noted Plaintiff's pain was out of proportion to any findings on her radiographic studies. He also wrote that Plaintiff had "findings consistent with CRPS type 1 in the right lower extremity." (R. at 606.)

On April 22, 2009, Dr. Mason Ahearn performed an independent medical examination and noted that Plaintiff had very definite rubor (redness) in her legs below the knee with some swelling in her ankles, with slightly uncomfortable sensation. Dr Ahearn agreed with Dr. Faaberg's impairment ratings, opined Plaintiff had not yet reached maximal medical improvement, and thought Plaintiff should be evaluated by an expert in RSD. He further stated that Plaintiff was "semi-wheelchair ridden; is incapable of any form of gainful employment[; and] is pretty much incapable of managing her home or taking care of her children, with the exception of driving them to school." (R. at 637.)

On June 23, 2009, Dr. Thomas A. Duc, Jr. performed an independent medical examination. He noted Plaintiff rated her pain levels as ranging between a four to five out of ten despite her medications including Lyrica, OxyContin, Oxycodone, Clonazepam, Cyclobenzaprine, and Omeprazole. He noted she was unable to heel or toe walk; had decreased strength in her right hamstrings, extensor hallucis longus, and quadriceps compared to the right; had a limping gait; was wheelchair bound on examination; and had "slight discoloration but nothing obvious." He noted Plaintiff did not have symptoms of CRPS other than her own reported discoloration and temperature difference. (R. at 454.)

On July 21, 2009, Dr. Grabowski noted Plaintiff had weight gain of nearly 100 pounds in the prior year due to lack of activity, chronic wheelchair use, and eating out of frustration. (R. at 680-681.) Dr. Grabowski found some swelling in all of Plaintiff's extremities on December 2, 2009. (R. at 798-799.)

Dr. Grabowski completed a questionnaire in May 2011 in which she opined that Plaintiff could lift less than ten pounds frequently and occasionally; could stand, walk, and sit for less than two hours in an eight-hour workday; could sit or stand for twenty minutes before changing position; would need to get up and walk every sixty minutes for five minutes at a time; would need to change positions at will; and would need to lie down at unpredictable intervals between one and five times per day. (R. at 871-872.) She further opined that Plaintiff could occasionally twist and stoop; could crouch somewhere between occasionally and never; and could never climb stairs or ladders. (R. at 872.) Additionally she opined that Plaintiff's fibromyalgia caused sore muscles and cramping, which limited her ability to reach, handle, finger, feel, and push/pull. Dr. Grabowski thought Plaintiff should avoid concentrated exposure to extreme temperatures and workplace hazards; Plaintiff often needed a wheelchair to ambulate; and Plaintiff's conditions would cause her to miss work more than three times per month. (R. at 872-873.)

Here, the ALJ did not include any discussion of RSD in his step two analysis. He found that Plaintiff's degenerative disc disease, fibromyalgia, and obesity impairments were severe impairments; her ankle fracture and anxiety/depression impairments were not severe impairments; and did not discuss any further impairments. (*See* R. at 15-17.) Although the ALJ noted Dr. Grabowski's diagnosis of RSD later in his opinion, he did not discuss this at step two. He appears to discount this diagnosis based on Dr. Grabowski's reporting that Dr. Tsai thought Plaintiff's symptoms were not consistent with RSD. Although the ALJ discussed some of the evidence of RSD noted by other examining physicians and psychologist Brabham, it is unclear whether the ALJ weighed this evidence in discounting Dr. Grabowski's diagnosis. Dr. Tsai's examination notes are not part of the record.[2] Thus,

---

[2] The parties dispute why Dr. Tsai's examination notes are not part of the record. Plaintiff argues the record in general is incomplete and the reports Defendant identifies as indicating that Plaintiff failed to list Dr. Tsai as an examining physician do not address the relevant time period. There is also disagreement as to whether records requested by the Commissioner from Dr. Enoch N. Tsai refer to the same "Dr. Tsai" discussed by Dr. Grabowski. (*See* Dkt. No. 16 at 24-26, Dkt. No. 17 at 4-5.) Upon remand, every effort should be made to obtain the records from the Dr. Tsai referenced in Dr. Grabowski's notes.

9

it is recommended that this action be remanded to the Commissioner to evaluate whether Plaintiff's RSD is a severe impairment.

II.   **Credibility**

Plaintiff argues that the ALJ erred in evaluating her credibility. In particular, Plaintiff asserts her sporadic daily activities, her initial reports that her pain stimulator helped her, some office visits indicating her pain was controlled, and allegedly normal findings upon examination (because she has fibromyalgia and RSD which rarely produce objective findings) do not show that she is not credible. She further argues there is no conflict between her testimony that she can sit no longer than ten minutes and her assertion that she uses a wheelchair if she needs to walk for ten minutes. (*See* Dkt. No. 15 at 28-32). The Commissioner does not appear to dispute that the ALJ may have overstated the significance of Plaintiff's daily activities, but argues this was merely one factor the ALJ considered in discounting Plaintiff's credibility. The Commissioner contends the ALJ noted numerous inconsistencies in the record which support the credibility finding.

As it is unclear from the record whether the ALJ properly evaluated Plaintiff's RSD, it is unclear whether he properly evaluated her credibility. It "is characteristic of [RSD] that the degree of pain reported is out of proportion to the severity of the injury sustained by the individual" and "conflicting evidence in the medical record is not unusual in cases of [RSD] due to the transitory nature of its objective findings and the complicated diagnostic process involved." SSR 03-2p at *1, *5; *see Ashcraft v. Astrue*, No. PWG-10-3425, 2012 WL 2990767, at *2 (D.Md. July 19, 2012); *Hill v. Comm'r of Soc. Sec.*, No. 6:10-cv-46-Orl-GJK, 2011 WL 679940, at *10-11 (M.D.Fla. Feb. 16, 2011)((noting "the ALJ failed to specifically evaluate [c]laimant's RSD, in accordance [with] SSR 03-2p, at any step in sequential evaluation process" and finding this failure "necessarily undermines" the ALJ's crediblity determination). Social Security Ruling 03-2p provides:

> Because finding that [RSD]/CRPS is a medically determinable impairment requires the presence of chronic pain and one or more clinically documented signs of the affected region, the adjudicator can reliably find that pain is an expected symptom in this disorder....Given that a variety of symptoms can be

10

> associated with [RSD]/CRPS, once the disorder has been established as a medically determinable impairment, the adjudicator must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities. For this purpose, whenever the individual's statements about the intensity, persistence, or functionality limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record.

SSR 03–2p at *6. If it is found that Plaintiff's RSD is a severe impairment, this impairment should be evaluated pursuant to SSR 03-2p. Upon remand, the ALJ should also consider Plaintiff's remaining allegations of error as to credibility.

**III.    Treating Physician**

Plaintiff argues that the ALJ failed to properly evaluate the December 2008 and May 2011 opinions of her treating physician, Dr. Grabowski. In particular, she asserts that Dr. Grabowski had sufficient information to form an opinion as to Plaintiff's limitations prior to August 2008, her limitations were not inconsistent with Plaintiff's allegations, the record indicates the requisite trigger points to support a diagnosis of fibromyalgia, the manipulative limitations are supported by the record, and the opinions of the other physicians are highly supportive of Dr. Grabowski's opinions. (Dkt. No. 15 at 32-39.) The Commissioner contends the ALJ properly discounted the December 2008 opinion because Dr. Grabowski's own treatment notes did not include any need for an assistive device until December 2008. Additionally, the Commissioner contends Dr. Grabowski's assessed limitation of no more than fifteen minutes of standing, sitting, or walking is more restrictive than Plaintiff's own report (during a January 2009 consultative examination) that she could stand, sit, or walk for up to thirty minutes before her pain became significantly worse. The Commissioner argues the ALJ properly accorded little weight to Dr. Grabowski's May 2011 questionnaire because the proposed limitations were inconsistent with her own treatment notes, Plaintiff's subjective allegations, and MRI findings.

The opinion of a treating physician is entitled to controlling weight on "the nature and severity" of the claimant's impairment(s) if it is "well-supported by medically acceptable

11

clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record. *See* 20 C.F.R. § 404.1527(d)(2); *Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001). Thus, "[b]y negative implication, if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." *Craig v. Chater*, 76 F.3d 585, 590 (4th Cir. 1996). Under such circumstances, "the ALJ holds the discretion to give less weight to the testimony of a treating physician in the face of persuasive contrary evidence." *Mastro*, 270 F.3d at 178 (citing *Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992)).

A "medical opinion" is a statement from an "acceptable medical source" that reflects the source's "judgment[ ] about the nature and severity of [the claimant's] impairment(s), including [his] symptoms, diagnosis and prognosis, what [he] can still do despite impairment(s), and [his] physical or mental restrictions." 20 C.F.R. § 404.1527(a)(2). However, statements that a patient is "disabled" or "unable to work" or meets the Listing requirements or similar statements are not medical opinions, but rather, are administrative findings reserved for the Commissioner's determination. SSR 96-5p. Furthermore, even if the plaintiff can produce conflicting evidence which might have resulted in a contrary decision, the Commissioner's findings must be affirmed if substantial evidence supports the decision. *See Blalock*, 483 F.2d at 775.

As it is unclear that the ALJ properly evaluated Plaintiff's impairment of RSD, it is unclear that he properly evaluated the opinion of treating physician Dr. Grabowski. As discussed above, a number of examining physicians noted possible symptoms of RSD, yet it is not clear from the ALJ's opinion whether he considered all of this evidence in apparently discounting Dr. Grabowski's RSD diagnosis. Further, as argued by Plaintiff, the Commissioner also did not directly address her assertion that a number of opinions from examining physicians support Dr. Grabowski's opinions. Upon remand, the ALJ should evaluate the opinions of Dr. Grabowski in light of all of the evidence and consider the remainder of Plaintiff's allegations of error as to Dr. Grabowski's opinions.

## **CONCLUSION AND RECOMMENDATION**

Based upon the foregoing, the Court cannot conclude that the ALJ's decision to deny benefits was supported by substantial evidence. It is therefore RECOMMENDED, for the foregoing reasons, that the Commissioner's decision be reversed and remanded to the Commissioner under sentence four of 42 U.S.C. Section 405(g) for further proceedings as set forth above. *See Melkonyan v. Sullivan*, 501 U.S. 89 (1991).

IT IS SO RECOMMENDED.


                                        s/Bruce Howe Hendricks
                                        UNITED STATES MAGISTRATE JUDGE

February 25, 2014
Charleston, South Carolina