# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# CHARLESTON DIVISION

| | |
|---|---|
| Linda Pierce, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action No. 2:12-cv-03272-JMC |
| v. ) | |
| ) | **ORDER AND OPINION** |
| Carolyn W. Colvin, ) | |
| Acting Commissioner of the ) | |
| Social Security Administration, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

This matter is before the court for review of the magistrate judge's Report and Recommendation ("Report") (ECF No. 19), filed February 25, 2014, regarding Plaintiff Linda Pierce's ("Plaintiff") claim for Disability Insurance Benefits ("DIB"). On November 15, 2012, Plaintiff filed the instant action seeking judicial review of the final decision of the Acting Commissioner of the Social Security Administration ("the Acting Commissioner") pursuant to 42 U.S.C. § 405(g). (ECF No. 1.) The magistrate judge recommends that the court reverse the Acting Commissioner's final decision. (ECF No. 19 at 13.)

For the reasons set forth below, the court **ACCEPTS** the magistrate judge's Report. The Acting Commissioner's final decision is thereby **REVERSED** and this action is **REMANDED**.

## FACTUAL AND PROCEDURAL BACKGROUND

The court concludes, upon its own careful review of the record, that the factual summation in the magistrate judge's Report is accurate, and the court adopts this summary as its own. However, a brief recitation of the background in this case is warranted.

1

Plaintiff filed an initial application for DIB on June 12, 2009, regarding a disability which she alleged began on February 1, 2007.[1]  (Tr. 118.)[2]  The Acting Commissioner initially denied Plaintiff's application and denied it again upon reconsideration.  *Id.*  On March 21, 2011, Plaintiff had a hearing before an administrative law judge ("ALJ").  (*See* Tr. 74–110.)  On April 29, 2011, the ALJ found that Plaintiff was not disabled.  (Tr. 118–28.)  Upon Plaintiff's request, the Appeals Council vacated the ALJ's decision and remanded Plaintiff's case to the ALJ for further proceedings.[3]  (Tr. 137–38.)

On January 17, 2012, Plaintiff had a second hearing before the same ALJ.  (*See* Tr. 43–73.)  On January 27, 2012, the ALJ issued a second decision finding Plaintiff was not disabled.  (Tr. 12–33.)  The ALJ determined that Plaintiff had the following severe impairments: degenerative disc disease, fibromyalgia, and obesity.  (Tr. 15.)  The ALJ concluded that Plaintiff had a residual functional capacity ("RFC") to perform sedentary work with the following specifications:

> [Plaintiff] is able to lift and carry up to 10 pounds occasionally and lesser amounts frequently, sit for 6 hours in an 8-hour day, and stand and walk occasionally, except she is limited to occasional stooping, kneeling, crouching, crawling, bilateral pedal pushing and pulling, and climbing stairs. She may not climb ladders and must be permitted to alternate sitting and standing.  Further [Plaintiff] requires the frequent use of a cane for balancing and occasional use of a wheelchair for prolonged distance walking.  She must avoid extreme heat, extreme cold, and unprotected heights.

---

[1] Plaintiff initially alleged an onset date of December 27, 2006.  (Tr. 118.)  Plaintiff amended her onset date at the first hearing before the ALJ.  *Id.*

[2] The court cites to pages in the transcript of the administrative record and not to the electronic case filing page numbers.

[3] The Appeals Council noted numerous flaws in the ALJ's decision, several of which the court references herein.  The Appeals Council found that the ALJ committed error by finding a limitation of no stooping and yet entering a finding that Plaintiff was not disabled.  (Tr. 137.)  The Appeals Council explained that ordinarily a limitation of no stooping will result in a finding of disability.  *Id.*  The Appeals Council instructed the ALJ to provide specific reference to evidence in the record to support the assessed limitations and to further evaluate non-examining source opinions and explain the weight given.  *Id.*

(Tr. 18.) As further discussed below, the central issue before the court is whether the ALJ properly excluded Plaintiff's treating physician's Reflex Sympathetic Dystrophy ("RSD") diagnosis as part of the ALJ's Step Two analysis[4] and as part of the ALJ's determination of Plaintiff's credibility.

Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) and § 1383(c)(3) of the Social Security Act to obtain judicial review of the final decision of the Acting Commissioner, denying her claim for DIB. (ECF No. 1.) The magistrate judge reviewed Plaintiff's case and provided the Report to the court. (ECF No. 19.) In the Report, the magistrate judge found that the ALJ did not conduct a proper analysis at Step Two in considering Plaintiff's RSD. *Id.* at 9–10. The magistrate judge further concluded that the ALJ erred in assessing Plaintiff's credibility in light of her RSD and did not properly consider Plaintiff's treating physician's diagnosis of RSD. *Id.* at 11–12. For those reasons, the magistrate judge recommended that the court reverse the final decision of the Acting Commissioner and remand the action for proper evaluation of Plaintiff's RSD diagnosis and its implications pursuant to Social Security Ruling 03-2P, *Titles II and XVI: Evaluating Cases Involving Reflex Sympathetic Dystrophy Syndrome/Complex Regional Plan Syndrome*, 2003 WL 22399117 (Dec. 7, 2007) ("the RSD Ruling"). The Acting Commissioner filed objections to the Report (ECF No. 21) to which Plaintiff replied (ECF No. 31).

## STANDARD OF REVIEW

The magistrate judge's Report and Recommendation is made in accordance with 28 U.S.C. § 636(b)(1) and Local Civil Rule 73.02 for the District of South Carolina. The magistrate judge makes only a recommendation to this court. The recommendation has no presumptive

---

[4] At Step Two, the ALJ determines whether the plaintiff has a medically determinable impairment that is "severe" or a combination of impairments that is "severe" within the meaning of the Social Security regulations. (*See* Tr. 13.)

weight.  The responsibility to make a final determination remains with this court.  *See Mathews v. Weber*, 423 U.S. 261, 270–71 (1976).  The court is charged with making a *de novo* determination of those portions of the Report and Recommendation to which specific objections are made, and the court may accept, reject, or modify, in whole or in part, the magistrate judge's recommendation or recommit the matter with instructions.  *See* 28 U.S.C. § 636(b)(1).

The role of the federal judiciary in the administrative scheme established by the Social Security Act is a limited one.  Section 405(g) of the Act provides, "the findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."  42 U.S.C. § 405(g).  "Substantial evidence has been defined innumerable times as more than a scintilla, but less than a preponderance."  *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964).  This standard precludes a *de novo* review of the factual circumstances that substitutes the court's findings for those of the Commissioner.  *See Vitek v. Finch*, 438 F.2d 1157 (4th Cir. 1971).  The court must uphold the Commissioner's decision as long as it is supported by substantial evidence.  *See Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).  "From this it does not follow, however, that the findings of the administrative agency are to be mechanically accepted.  The statutorily granted right of review contemplates more than an uncritical rubber stamping of the administrative agency."  *Flack v. Cohen*, 413 F.2d 278, 279 (4th Cir. 1969).  "[T]he courts must not abdicate their responsibility to give careful scrutiny to the whole record to assure that there is a sound foundation for the [Commissioner's] findings, and that this conclusion is rational."  *Vitek*, 438 F.2d at 1157–58.

## DISCUSSION

The magistrate judge explained in the Report that the ALJ's evaluation of a case involving RSD must comport with the RSD Ruling.  (*See* ECF No. 19 at 10–11.)  The court

agrees. The court herein incorporates several provisions of that ruling that are pertinent to the issues of this action.

> The RSD Ruling describes RSD as follows:
>
> RSDS/CRPS is a chronic pain syndrome most often resulting from trauma to a single extremity. It can also result from diseases, surgery, or injury affecting other parts of the body. Even a minor injury can trigger RSDS/CRPS….It is characteristic of this syndrome that the degree of pain reported is out of proportion to the severity of the injury sustained by the individual….
>
> RSDS/CRPS patients typically report persistent, burning, aching or searing pain that is initially localized to the site of the injury….The degree of reported pain is often out of proportion to the severity of the precipitating injury….
>
> RSDS/CRPS constitutes a medically determinable impairment when it is documented by appropriate medical signs, symptoms, and laboratory findings, as discussed above.[5] RSDS/CRPS may be the basis for a finding of "disability." Disability may not be established on the basis of an individual's statement of symptoms alone.
>
> For purposes of the Social Security disability evaluation, RSDS/CRPS can be established in the presence of persistent complaints of pain that are typically out of proportion to the severity of any documented precipitant and one or more of the following…
>
> - Swelling;
> - Autonomic instability—seen as changes in skin color or texture, changes in sweating (decreased or excessive sweating), changes in skin temperature, and abnormal pilomotor erection (gooseflesh);
> - Abnormal hair or nail growth (growth can be either too slow or too fast);
> - Osteoporosis; or
> - Involuntary movements of the affected region of the initial injury.
>
> When longitudinal treatment records document persistent limiting pain in an area where one or more [abnormal signs] has been documented at some point in time since the date of the precipitating injury, disability adjudicators can reliably determine that RSDS/CRPS is present and constitutes a medically determinable impairment. *It may be noted in the treatment records that these*

---

[5] The symptoms of RSDS/CRPS referred to here are the same symptoms discussed below. *See* SSR 03-2P, 2003 WL 22399117 at *2.

> *signs are not present continuously, or the signs may be present at one examination and not appear at another. Transient findings are characteristic of RSDS/CRPS, and do not affect a finding that a medically determinable impairment is present....*
>
> It should be noted that *conflicting evidence in the medical record is not unusual in cases of RSDS* due to the transitory nature of its objective findings and the complicated diagnostic process involved. *Clarification of any such conflicts in the medical evidence should be sought first from the individual's treating or other medical sources….*
>
> …Given that a variety of symptoms can be associated with RSDS/CRPS, once the disorder has been established as a medically determinable impairment, the adjudicator must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities.

SSR 03-2P, 2003 WL 22399117 at *1−6 (emphasis added).

The magistrate judge found the ALJ's discussion of Plaintiff's purported RSD materially lacking. The magistrate judge noted that the ALJ did not discuss RSD at all in her Step Two analysis. (ECF No. 19 at 9.) The magistrate judge described that while the ALJ mentioned some of the evidence pertaining to RSD at later points in her decision, the ALJ did not clearly indicate how this evidence was factored into the ALJ's discounting of Plaintiff's treating physician's diagnosis of RSD. *Id.* at 9, 12. Finally, the magistrate judge concluded that without properly considering Plaintiff's RSD diagnosis, the ALJ failed to incorporate the syndrome's characteristics into Plaintiff's credibility determination. *Id.* at 10–11. Specifically, the magistrate judge noted RSD's traits of involving a degree of pain out of proportion to the severity of the injury and its transient nature, which often results in conflicting evidence in the record. *Id.* at 10–11.

The Acting Commissioner has submitted five principal objections to the Report. (ECF No. 21.) First, the Acting Commissioner contends throughout his objections that any error committed by the ALJ was harmless. *See, for example, id.* at 3. Second, the Acting

6

Commissioner argues that the ALJ was not required to mention RSD at Step Two so long as the ALJ considered all of the relevant medical evidence. *Id.* at 2–3. Third, the Acting Commissioner states that the ALJ did not err in not crediting the treating physician's diagnosis of RSD where the weight of the record did not support that diagnosis. *Id.* at 3–7. Fourth, the Acting Commissioner contends that the ALJ's failure to discuss how the RSD diagnosis impacted Plaintiff's credibility did not undermine the credibility evaluation. *Id.* at 7–8. Fifth, the Acting Commissioner asserts that the ALJ properly diminished the weight of Plaintiff's treating physician's RSD diagnosis. *Id.* at 8–10. The court will address each of the Acting Commissioner's objections in reverse order.

### ALJ's Discounting of the Treating Physician's RSD Diagnosis

Ordinarily, a treating physician's opinion is entitled to great weight. *See Mastro v. Apfel,* 270 F.3d 171, 178 (4th Cir. 2001); 20 C.F.R. § 416.927. Where the treating physician's findings are "well-supported by medically acceptable clinical and laboratory techniques and is not inconsistent with the other substantial evidence in the record", the ALJ must grant it controlling weight. *Id.;* SSR 96-2P, 1996 WL 374188 (July 2, 1996). However, "the ALJ holds the discretion to give less weight to the testimony of a treating physician in the face of persuasive contrary evidence." *Mastro,* 270 F.3d at 178; 20 C.F.R. § 416.927. When the ALJ decides against granting controlling weight to the treating source's opinion, the ALJ must consider a set of factors, namely: the length, nature, and extent of the treatment relationship; the frequency of examination; the supportability of the physician's opinion; the extent to which the opinion is consistent with the record; and whether the treating physician is a specialist for the medical issue involved. 20 C.F.R. § 404.1527(c)(2). Additionally, the ALJ's decision must provide an

7

explanation with solid reasoning for reducing the weight of a treating physician's opinion.  SSR 96-2P, 1996 WL 374188 (July 2, 1996).  The Social Security Regulations state, in relevant part:

> [The ALJ's] decision must contain specific reasons for the weight given to the treating source's medical opinion…and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.

*Id.*

The ALJ acknowledged that Plaintiff's treating physician Dr. Kathleen Grabowski diagnosed Plaintiff with RSD in January 2009.  (Tr. 25–26.)  The ALJ described that Dr. Grabowski's February 2009 treatment notes indicated that Plaintiff had been seen by Dr. Tsai, a neurosurgeon, who opined that Plaintiff's symptoms were not consistent with RSD.  (Tr. 26.)  However, Dr. Tsai's evaluation was not included in the record before the ALJ.  *Id.*  While the ALJ provided some reasoning for discounting Dr. Grabowski's opinions on other issues, (*see, for example,* Tr. 25), the court finds the ALJ offered no explanation for her decision to disregard Dr. Grabowski's RSD diagnosis.  While the Acting Commissioner emphasizes that Dr. Tsai, a specialist, found that Plaintiff did not have RSD, the court notes that the ALJ's mere mentioning of that fact does not constitute the explanation with solid reasoning that is required.  Moreover, as the RSD Ruling makes clear, the ALJ was obligated to attempt to clarify any conflicts in the evidence from Plaintiff's treating and other medical sources.  Because the court does not find that the ALJ's discussion of Dr. Grabowski's RSD diagnosis comports with the RSD Ruling or the standard for evaluating the opinion of a treating physician, the court remands for further consideration of Plaintiff's RSD diagnosis consistent with those guidelines.

**ALJ's Credibility Determination**

The ALJ found that "[w]hile the claimant complains of pain in her lower extremities and some pain with ambulation, the record does not document that the combination of these

8

impairments is equal in severity to the Listings referenced above." (Tr. 17.) Because the ALJ did not properly consider Plaintiff's treating physician's diagnosis of RSD, the court cannot conclude that this determination adequately considered the unique characteristics of RSD which might otherwise, i.e. in a non-RSD context, suggest diminished impairment. Therefore, the court agrees with the finding of the Report that the ALJ's credibility determination is undermined by the absence of a substantive discussion regarding Plaintiff's alleged RSD and as such warrants more deliberation.

**The Acting Commissioner's Remaining Objections**

Although the Acting Commissioner contends that the weight of the evidence did not support a diagnosis of RSD, the court disagrees. The Acting Commissioner relies upon a post-hoc argument that Plaintiff's treating physician abandoned her RSD diagnosis, a proposition that was absent from the ALJ's decision. Moreover, the record contains both medical opinions that would support an RSD diagnosis and medical impressions that would undermine it. (*Compare* ECF 19 at 6–10 *with* ECF No. 21 at 3–5) (discussing the support or lack thereof for the RSD diagnosis). Significantly, as mentioned previously, there is no indication that the ALJ attempted to clarify the seeming conflicts of the medical evidence as instructed by the RSD Ruling. For that reason, the court is not persuaded by the Acting Commissioner's insistence that the ALJ conducted a proper Step Two analysis.

The court need not determine whether the proper RSD evaluation must occur at Step Two or whether it is sufficient for it to be included at any point in the record because, on the facts of this action, the proper analysis was entirely absent. To reiterate, the court finds the ALJ did not properly consider the diagnosis of RSD by a treating physician in deciding whether Plaintiff's combination of impairments was severe at Step Two. As such, the court is satisfied that the

harm of this error is apparent on the face of the record thereby alleviating Plaintiff from the requirement to establish prejudice. *See Shinseki v. Sanders*, 556 U.S. 396, 410 (2009).

## CONCLUSION

For the foregoing reasons, the court **ACCEPTS** the magistrate judge's Report and Recommendation (ECF No. 19). The court thereby **REVERSES AND REMANDS** the Acting Commissioner's final decision.

**IT IS SO ORDERED.**

*J. Michelle Childs*

United States District Court Judge

March 31, 2014
Columbia, South Carolina